Appellant number 21-2630. We'll hear from the appellants. May it please the court, Ryan Morrison on behalf of appellants and with me at counsel's table is my co-counsel Walter Lewis. And in the front row behind me is my client, Mr. Eugene Mazo. I would like to reserve three minutes for rebuttal, please. New Jersey was not required to give primary election candidates an opportunity to speak to voters on the ballot. But once it did, the slogan statutes became subject to the speech clause of the First Amendment. Because these laws regulate the content of candidate political speech, they can only stand if they pass strict scrutiny. What authority do you have to say that the Intersen verdict test doesn't apply? Your Honor, it's Reid v. Town & Gilbert. It's been decided since then. These are content regulations for speech. Do you think that Reid totally discounts all of the other Supreme Court precedent, which examines speech on ballots, and where the court said a ballot is not an expressive place? Your Honor, there's a multifaceted response to your question. No, I do not believe it entirely sweeps away the entire Anderson verdict framework. I do not. What I do think is that these statutes are unique, and there's nowhere else in the United States where you have a slogan on the ballot. That takes these out of the typical ballot law analysis. What about all the states that have rules concerning use of nicknames or middle names? Well, Your Honor, I'm unfamiliar with all the nickname rules in the country. I know some, the Ninth Circuit has faced a situation where out in California you're allowed to put your profession on the ballot. And there was a case out there where a person wanted to be listed as a peace activist. And this case is Rubin v. City of Santa Monica. It's a pre-Reid case. And they thought that they should be able to put whatever, peace activist. And so they challenged it on speech grounds. And the issue for the Ninth Circuit was whether they placed severe burdens on free speech rights. And they did not believe that it placed a severe burden, so they didn't really get into the speech clause. But it did say that restrictions on core political speech places a severe burden on candidates. And so under the Anderson-Burdick analysis, like our slogan statutes in New Jersey, we believe it places a severe burden on candidates' speech. You would still get to strict scrutiny. Regardless of how Your Honors want to get to strict scrutiny, either through the Reid method, which we believe is the correct one, you still get there under the Anderson-Burdick framework. Well, help us understand because it's really not clear in the case law where that dividing line is for Anderson-Burdick versus the First Amendment more typical analysis. And even if you have something that's content-based, as long as it's still politically neutral, wouldn't that still be Anderson-Burdick? Or is it your position that anything that is where there's a content-based regulation takes it out of the Anderson-Burdick framework? Your Honor, I'm going to try it. You asked several different things there. I'm going to do my best to tick every one of them off. Once you get into the content-based speech regulations, then yes, we believe that it falls under Reid and that it deserves strict scrutiny. Now, I'm trying to pivot from what you've asked me and fulfill my obligation to Judge Schwartz to answer your question, that all the other Anderson-Burdick case law did not involve pure speech. We had a situation where there were some plaintiffs trying to force states to create an avenue for them to speak on the ballot, and none existed. In New Jersey, they've already created one. And once you've done that, you're subject to the speech clause of the First Amendment. But it's still the ballot, right? So, I mean, to the extent with, you know, Anderson-Burdick, we're looking at things like does it relate to a mechanic of the electoral process? Isn't the ballot the most core mechanic one could find for the process itself? Well, Your Honor, you're correct that it is very mechanical. Let's just take one moment. Your Honor, we've lost the video for Judge Roth. All right, she's back. Thank you. The ballot itself is a mechanic of an election, yes. But New Jersey's opened up an avenue for people to speak on the ballot. Typical mechanical laws have to do with how early can you vote early, the days before the election, voter eligibility requirements, voter ID, write-in candidates, whether you have to nominate your candidate through a primary, how to run the election, not purely candidate speech. Because, after all, what's the difference between a statement a candidate makes out on the campaign trail versus where he's allowed to on the ballot in New Jersey other than location and number of words? But doesn't that matter? I mean, when we think about, again, where that dividing line is, why isn't it looking to things that are on election day, actually inside the polling place, on the ballot itself, as opposed to the campaigning that takes place beforehand and outside of the boundaries of the polling place? Why isn't that the right way to think about what divides the Anderson-Burdick applicability from just a traditional First Amendment test? It seems like your Honor is trying to say the dividing line is that because this is an election code law, that that's the dividing line. That's not what Judge Krause is asking. Judge Krause is asking you the mechanics of an election, the critical component of that is casting the ballot and what the ballot looks like. And Judge Krause's point, I think, is all of the things that Judge Krause described, even the things that you noted, write-ins, deadlines, all deal with the electoral process itself, the mechanics of the election. Is that a dividing line where that's Anderson-Burdick and everything outside of that mechanical process is subject to the First Amendment? Yes, Your Honor, I believe it is. I believe it is. And what appears on the ballot, part of that mechanic of the electoral process? In respect to the case law that we've seen, like Timmons in Washington State v. Grange, which had to do with party ID, freedom of association, candidates wanted to cross-ballot endorse fusion candidates, and that wasn't allowed. This is how somebody is listed on the ballot, and the state has a way to regulate that, because like in the, oddly, you know, we had the district court also decided, another case with a similar New Jersey law, but it was different because all it had to do with, and this was the Democratic-Republican organization versus, I'm not going to pronounce it correctly. It's Guadano. Guadano, yes. Yes, Judge. But the difference between what we have here in our case, and that is, that was just how a candidate appeared on the ballot, party ID. That's mechanics. The statute at issue here allows for the statement so that one can indicate an official act or policy to which the candidates pledged or committed or distinguished him as belonging to a particular faction or wing of his political party. And that sounds very much like a listing of a political party of political affiliation. How is it really something that is more core speech than the identity of the party? I have to disagree with you, Your Honor. That is what the purpose is in the statute, says like the party position, but there is no restriction on that's what you have to stick to on the ballot. Your slogan doesn't have to stick to those criteria at all. And, in fact, you know, going, turning back to Reed, the Supreme Court held, it doesn't matter what the intent of the law is. If it's a content-based regulation of speech, it doesn't care. The Supreme Court doesn't care what the purpose behind it is. Are you talking about your representation concerning the statute? Judge Crouse is quoting from the statute, which says, you can do in not more than six words, quote, for the purpose of indicating either an official act or policy to which he or she has pledged or to distinguish him as belonging to a particular faction or wing of a political party, close quote. So that doesn't sound like a suggestion. It sounds like the purpose. They said there are certain things you can do on the ballot, and these are the things you can do so long as you're a candidate, and if you name a person or enter New Jersey, you get consent. I don't deny that's what the statute says, but I think in practice people are allowed to say whatever they want as long as they don't mention a person's name or New Jersey corporation, and then they're required to get authorization. Is there some authority for that in terms of the state court's interpretation of the statute or something in the record that shows that it's not limited, in fact, to the actor policy or identification with a party? Well, Your Honor, I think my client, Ms. McCormick, tried to do Bernie Sanders betrayed the New Jersey revolution, and she was denied because she didn't get authorization for Bernie Sanders. I don't think that's necessarily a policy position or an identification with a certain party at all. Excuse me. I had a question I had meant to get in earlier before I had problems with the power feed onto my iPhone. Talking about Anderson verdict and Reed, and you are proposing that the Reed test for strict scrutiny should apply, is there any difference between strict scrutiny under Anderson verdict and strict scrutiny under Reed? Only insofar as how you get there, Judge Roth. Once you reach strict scrutiny under Anderson verdict, it is the same test as under Reed. Do you have to prove under Anderson verdict whether you're dealing with a public or non-public forum? No, Your Honor, you don't. And you brought that up, and let me just recap just for a moment. To get to strict scrutiny under Anderson verdict, of course, you have to show a severe burden on the candidate. If there's a low burden, the government has to present a lower level of evidence. I call it intermediate scrutiny. I don't think it really has a name to it at all, the sliding scale. If there's a greater burden on the candidate, then you get to strict scrutiny, and then you have the compelling interest and the tailoring. There is no non-public forum issue at all, but since Your Honor brought that up, those issues are not before the court. It was not raised at the district court or substantively argued as determinative in the briefing. The secretary mentioned the issue in her brief in response to an argument made by amicus, but she ultimately dismissed the issue and argued that Anderson verdict was the proper test. And because the secretary was not arguing anything other than Anderson verdict, we had no reason to respond to a forum argument in our reply brief. But now she is substantively raising the issue for the first time in the letter to the court that you guys asked for. Pardon me, Your Honors. That is improper, and her argument should be ignored, but to the extent the court wants to entertain this argument, I'll turn you back to that same Ninth Circuit case and the Rubin case. The Ninth Circuit dismissed that issue completely out of hand. They said, well, both parties are raising this. We don't think it's relevant at all. But other courts have, the Fourth Circuit and Seventh Circuit, have looked at ballots being a non-public forum. The Supreme Court has described a ballot as not a place for expression. True. So even under your view that New Jersey has granted some permission to say certain things on the ballot, would you agree it's a non-public forum? I will concede that in totality it is a non-public forum. I must argue that the sliver of six words allows a sliver of some private political speech. But you're talking about the non-public forum, and I think if your judge will allow me to address Mansky just for a moment. With respect to the Mansky standard, the slogan statutes are unreasonable regulations of speech because they're unworkable. If a candidate wants to express her domestic policy bona fides by using the slogan, never Trump, or Biden ruin the economy, or if a candidate wants to explain her foreign policy beliefs by using the slogan, Putin is a murderous dictator, or Xi Jinping will destroy Taiwan, the candidate will never get authorization from these people to do that. I want to make sure I understand your challenge. You've only challenged the statute's requirement on consent, correct? That's correct. And nobody will ever get that from those people. And if a candidate wants to falsely claim an endorsement from the Wall Street Journal, the Washington Post, the NRA, or the Sierra Club, she can because these organizations are not New Jersey businesses. This is ridiculous. It's unreasonable and unworkable. It also shows that the slogan statutes are not properly tailored in addition to how they fail under Mansky. They're under-inclusive in that respect. You seem to be focused on Reed, and a lot of your argument, even that the First Amendment has supply, seems to turn on this being content-based. That arguably was a stronger argument before this term because the city of Austin puts a different spin on Reed, doesn't it? And here, when we look at what this statute requires, all it really requires is that you look at the proposed statement just to see if consent is required or not. The application of a consent requirement, which is all that happens at that point, how does that relate to content at all? I believe Your Honor is saying, how is this not like any other time, place, and manner regulation? Is that a good interpretation of your question? This is what you've expressed about your understanding of what's content-based. Reed, the Supreme Court has said in the city of Austin, was sort of over-applied by the courts of appeals. The fact that you simply need to look at a regulation is not what determines it's content-based. It has to be dealing with a particular subject matter. And all that's required here is you look at the proposed slogan for whether it's subject to the consent requirement or not. That in and of itself would seem to be within the city of Austin, not Reed. And when you do that, all that's left to do is apply the consent requirement, which has nothing to do with subject matter, does it? Well, Judge, I have to respectfully disagree. I do not believe that Austin impacts our argument at all. In Austin, you look to see, it was much more traditional time, place, and manner, because you look at the sign, is the sign talking about what's below it on the ground? Yes or no? Here, the statute might not apply to every single slogan. It only applies to those that have the content of a person's name or New Jersey business. So it doesn't apply every time. I mean, they think about subject matter for differential treatment. Laws require an examination of speech to discern whether it substantively mentions people or New Jersey corporations. And then it triggers triggering the regulation as to viewpoint, allowing viewpoints approved by the speech of subject, disallowing viewpoints unapproved by the speech of subject. Slogans that speak well of a named person or corporation will be approved. Other views of these people and entities will not. And these distinctions are not neutral. But the approving authority is not the state under your set of statements. It's the person whose name appears or the entity whose name appears. So how is the state engaging in any viewpoint discrimination at all by operation of this consent requirement? Your Honor, unfortunately, I didn't make that note in my briefing binder today, because I'll refer to my actual brief I submitted. We discussed that towards the end of the principal brief. I'll refer to you as that, because the state enables these people. They cannot dodge responsibility for what they've done in the law. In a six-word slogan, mentioning a person or corporation is inseparable from the ballot's substantive message itself. Consequently, regulating political speech that discusses individuals and New Jersey corporations, but allowing all political speech that omits discussion of individuals and New Jersey corporations, is not a content-neutral application of law. Okay, counsel, I'm going to see if you're at the red light, and I just want to see if my colleagues have questions for you. Very well. I have no further questions. Thank you, Judge Roth. Judge Krause? Just on the circumstances where Anderson-Burdick applies, at this point, having reviewed the Supreme Court case law, are you no longer pressing the argument that Anderson-Burdick is limited to association claims? That's just the way the case law is played out. It applies to, like, mechanics and other election law claims. We believe you can get to strict scrutiny either route. We believe the better route is through Reed. But if you all disagree, that's fine. We believe the burden is severe enough on political candidates to get to strict scrutiny under Anderson-Burdick. Either way, you get to strict scrutiny, the law fails. One other question for you, because particularly in recent cases like McClellan, the Supreme Court has demanded that there be real evidence of both need and burden. And what do we have in this record that indicates in terms of a severe burden for a facial challenge as to, for example, how many people have sought consent or been denied, or even as to the burden on your clients? Unfortunately, Your Honor, the record is not long. We are here on a motion at the pleading stage and a motion to dismiss. So the record was never really developed through discovery. Thank you. Okay. Counsel, I have you on rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Deputy Solicitor General Angela Cai on behalf of FLE New Jersey Secretary of State. For nearly a century, New Jersey has required that ballot slogans in primary elections may not reference other entities without their consent. That is because the slogan serves a narrow but important purpose, identifying policies or a wing of the party that the candidate belongs to. The consent provision ensures the slogan is cabined to that purpose and prevents misrepresentation of associations that could mislead voters. That makes the slogan very different from campaign speech. As the Timmons Court said, the ballot is not a billboard for political speech. You're representing that it's narrowed to what it's stated as the purpose of allowing these six words. But with the examples that we have here, you know, me, not us, or with the Bernie Sanders slogan, are those really identifying a particular faction or wing or a policy or act? So with respect to Appellant Mazo's desired slogans, all of those he tried to co-opt the slogans of actual organizations and political party subdivisions that were factions or wings of their political party. He just was not the endorsed candidate of those entities. So, for example, he wanted to use the slogan Hudson County Democratic Organization, but their support went to his opponent. So had that slogan been used, voters would have been misled into thinking he was the endorsed candidate and not somebody else or that they were both endorsed falsely. With respect to Appellant McCormick's proposed slogans, not me, us was the slogan of the Bernie Sanders 2020 campaign for president. And so her attempt to co-opt that slogan would have been indicating to voters that she was a part of the Bernie 2020 slate of candidates in New Jersey, which she was not. And so that, too, would have given voters a misleading impression of who she was associated with and also who the Sanders campaign was associated with. You said that she was not associated with the Sanders slate of candidates. Are you saying then there were slates of candidates that were among those that were Sanders candidates who got to use not me? Correct. There were other candidates for other offices who were allowed to use the slogan not me, us, and McCormick was not one of them. And that goes to the compelling state interest in this case, because what the slogan statute's consent provision does is prevent individuals from falsely co-opting other people's slogans with the support of organizations or indications of solidarity with other individuals that don't consent to giving that to them. How is it when it seems limited on its face to associations that are incorporated in the state of New Jersey? What about associations incorporated in the rest of the country? Your Honor, that is an effort, I think, to tailor the requirements of the statutes that are just not too broad. There are many registered organizations in the 50 states and other countries, and candidates understandably are not required to check if I wanted to use I love puppies, perhaps as a registered entity in Vermont. And that would have nothing to do with what I'm trying to do when I say my slogan is I love puppies, they should be protected, I'm an animal rights activist, for example. So I think that is more, that actually demonstrates why the statute is narrowly tailored to ensure that candidates, especially when the law was enacted in 1930 but also true today, are not scouring the face of the earth for incorporated associations in other states and other countries that would not necessarily go to the interests that they are trying to assert on the ballot. And I think what's important is that appellant in their briefs already agree that the state interests are important. After all, you know, four of the five slogans that issue in this case would have misled voters and infringed true associational interests. And so because the heartland of the statute's reach is to prevent these very serious harms, the facial challenge has to fail under any level of constitutional scrutiny. What test are we applying, and how do we draw this line? Yes, Your Honor. The test that the court should apply is the Anderson-Burdick test. So the appellants try to sort of undermine that by saying that somehow Anderson-Burdick doesn't apply either to at all anymore after a read, to anything involving speech, or only applies to things that are mechanics. But the reality is elections play an important role, and that's why states have to regulate elections. And the reason that Anderson-Burdick applies to ballots is because states have to regulate ballots. And so there's a more flexible test that is ordinarily used under other First Amendment doctrine. So the attempt to undercut Anderson-Burdick in free speech claims contradicts both logic and precedent. So, after all, Burdick itself was a free speech case. In that case, the plaintiff was challenging Hawaii's ban against write-in voting. He claimed, my right to express myself by writing in the candidate of my choice has been infringed. Obviously, Burdick applied the Anderson-Burdick test, that's the test that it's named after, and said a flexible balancing test is required for situations like these, even when the plaintiff is asserting a free speech claim as to what they can say or not say on the ballot. Does the situation change if the state gives a candidate the right to speak on the ballot? So, first, I don't think the state is giving the candidate an unfettered right to speak whatever they want to speak on the ballot. That's definitively not true by the terms of the statute. But, no, the test is no different just because the state gives some ability for the candidates to choose certain words. So this court held in Guadagno, for example, that in that very analogous statute, candidates are allowed to choose three words in the general election ballot, not the primary ballot. And the plaintiff there wanted to call himself a Democratic-Republican. He claimed that that was a hearkening back to the founding era and that party as a part of the founding, and that's what he was trying to express in terms of his association. The statute still said you cannot use the name of another political party, so you can neither use Democrat nor Republican, and this court affirmed the district court's decision to apply Anderson-Burdick under that test. But I think that's also true for, you know, you can even apply that analysis to any number of ballot access regulations that are about whether or not the candidate can speak at all on the ballot, right? What the candidate can speak as to, specifically, and whether or not the candidate can even bring any kind of message on the ballot is no different. They're all features of the same kind of claim. Association is a part of it, but speech is at the heart of many of these claims. Is there any significance in the fact that the statements you can't make on the ballot, a candidate still could make in a public forum, or that the statements you can't make on a ballot, the same essence can be described by using synonyms? Your Honor, yes, and that goes to, under the Anderson-Burdick test, how severe the burden is on the candidate's asserted right. So the appellants try to cast the severity of the burden as how hard is it to get consent, but that's not what the Anderson-Burdick test is trying to get at. It's how heavy is the burden on your right to speak in general. And as the district court explained, first, some candidates do get consent, right? They are able to obtain the consent that they need to reference somebody else, and they're able to speak in exactly the manner they choose. If no consent is forthcoming, they can still speak the same message at any other point in time in their campaigns, in the public square, on the Internet, looking people up in the yellow pages and sending them mail the old-fashioned way. And as the Janess court in the 1970s held, that means that the individual's right to speak to voters is not heavily burdened, and that's true in this case as well. So because the candidates' asserted burden is not severe, accordingly under Anderson-Burdick, the state need only show an outweighing interest of state interest, not a compelling state interest or that it's narrow, at least restrictive means or anything like that. And so I think I've already described why it is that the state has important interest and that they are compelling, and I think that misleading voters into voting for someone they didn't intend to vote for not only negates the voter's vote, which is very important to the state's interest, but also undermines voter confidence in what the ballot was saying all along and whether the ballot was speaking truth to them. If we agree that the statute here is regulating speech, political speech at that, on the ballot, and the Anderson-Burdick can apply to political speech on a ballot, what distinguishes the application of Anderson-Burdick, when you've got political speech in question, from the First Amendment? Is it just the fact that it is on the ballot? Is it something about the nature of the speech? Is it the time or the place, being Election Day or within the polling place? Where we're talking about political speech, how do you tell when to apply one test versus the other? I think the McIntyre Court put it best when it explained that speech that goes to the election process or any kind of claim that goes to the mechanics of the election process is evaluated under Anderson-Burdick. And so here, what you have is what voters see the moment before they literally punch in or check off or write in the candidate they want to vote for. And it very much goes to informing voters at the moment of their choice to actually mechanically cast their vote for their candidate who that individual is aligned with and where they appear on the ballot. And that, I think, is why Anderson-Burdick has to apply to cases like this about the ballot itself. There are other cases that are off of the ballot where Anderson-Burdick nevertheless does apply. So, for example, all of the cases about the percentages of signatures you need to even get on the ballot, those are ballot-adjacent or mechanics-adjacent cases that also apply Anderson-Burdick. Now, you have cases that are too attenuated from the mechanics of voting in the ballot itself. So McIntyre, whether or not you can send leaflets about any issue that may be up for an election at any time before, that's too attenuated from the mechanics of voting itself. What if it's a regulation like McIntyre but it's on election day and it's within so many feet of the polling place? So that's Mansky, Your Honor, and Mansky used a different analysis, although I would argue that on its face it actually does not benefit appellants at all because it actually even used a lower standard of review. So Mansky was about what people can wear inside a polling place. And the difference between that case and other cases about electioneering, like Burson, is that the statute at issue was so general. Like any issue that could possibly be political, you couldn't wear on your T-shirt or hat or whatever. So if someone showed up happening to wear a Sierra Club T-shirt or Earth Day T-shirt and if environmental issues were on the ballot, there could be a chance that person would not be allowed to even wear that shirt. Inside the polling place? Correct. So what about just outside the polling place? Is that subject to the First Amendment or is that subject to Anderson-Burdick once you leave those doors? I think if it's not within a buffer zone, so to speak, of the polling place where election activities are being conducted, I think that is just about free expression and what people want to wear at any moment of their lives is certainly subject to regular First Amendment analysis. And either case, though, if this Court doesn't want to apply Anderson-Burdick, what analysis in general First Amendment or any other First Amendment case would first have to satisfy what kind of forum is it. And I think the fatal mistake that appellants make is assuming that just because the government has opened up the forum for six words by individuals for a limited purpose means that those individuals can express anything they want. That is very clear. The forum analysis only applies if we're in a First Amendment analysis. We don't consider a forum analysis for Anderson-Burdick purposes. Am I correct? Correct, Your Honor. So Burdick itself, as I said before, is about what appears or what someone can say on the ballot. There is no forum analysis as to that. But even if this Court wanted to apply a forum analysis in conjunction with Anderson-Burdick, I think Timmons is very clear that the forum of the ballot is not a public forum. It's not a billboard for last-minute campaigns. It's not a free six-word advertisement for individuals to use. If this Court looks to cases like Perry and other cases of the Supreme Court in this Court, and I'll just note one that came to mind that I guess we didn't cite but is very similar to Perry and Mansky is Arkansas Educational Television Commission v. Forbes 523 U.S. 666. It's a 98 case where the Supreme Court held that just because a public TV station invited some candidates for a debate doesn't mean a political debate, doesn't mean that that forum is now a public forum, nor is it a designated public forum. It's a non-public forum where only rational basis applies. I'd like to follow up on something Judge Krause asked your colleague across the aisle about content. Yes, Your Honor. Your brief at page 2 says the slogans do relate to the form and content of the ballot, and on page 39 you say that they're not content-based. The only way we can determine whether the statute covers it is to look at the words expressed. How is that not a content-based regulation? Because as the Supreme Court held in the city of Austin, just because many regulations require the reader to look at what's being said to know what kind of regulations apply. You know, I need to know is this a securities 10-K or is it an OSHA poster, to know even what kind of regulations apply to this kind of statute or this kind of content. And that's exactly what's at issue here. You need to know what is it in order to know does the consent provision kick in. Just as in Austin. So I'm with you on city of Austin has softened or even maybe omitted one of the considerations in Reed. But once we get to the point where we're allowed to look at the ballot, the only one subject to the consent requirement is if the content of the message mentions a person or New Jersey entity. How is that not content-based? Because it's not that, so the difference between this and cases like Reed is that it's a one level of generality higher. It's not because you've said, you know, I love Bernie Sanders or this organization supports me, you are or are not allowed to use the speech that you desire. Rather, all that the reading of the message does is kick in a level of analysis about what kind of rules apply to you. And that takes this different from Reed and the level of generalities higher. We're not differentiating between what message is being sent. Rather, it's about receiving some information about what the message is about to see whether or not the government's interest kicks in and applies to you at all. And so the same is true here as in Heffron, for example, where the question was a rule that says if you're soliciting for money, you can't do it on the general Minnesota state fairgrounds, you have to do it in a booth. So you need to know whether or not the message that's being sent is a hello, how are you, or is it a solicitation for money for any organization. Using the language from the city of Austin, it's agnostic as to what the content is. We're only looking at it to see whether a person or entity is mentioned. Correct, exactly. So you can say anything you like, as the district court said, about whatever it is that you want to say so long as you have consent from that person. And so that's one other question that I'll ask my colleagues if there's other questions. Washington State Grange talks about disclaimers. Why not just have a disclaimer? Because nothing in here has been endorsed by the person mentioned. Yes, the reason not to have a disclaimer, and I think this is actually very important, is that would actually very much undermine the state's interest in the integrity of the election and the sanctity of the ballot. Voters come into the voter voting booth to vote for individuals that are listed on the ballot. They generally expect that the information listed on the ballot is accurate and not incorrect and that the state is not giving them false information the state has no way of verifying whatsoever. And so I think by saying nothing on this ballot might be true or may not be true or these statements could be verified, could not be verified, that would certainly undermine voter confidence and it would create voter confusion because voters who go have to assess between which slogans are true associations and which ones are not. Third, I think it would actually undermine the associations, the true associational interests of individuals who have consented to associate with each other. So there are candidates who have been endorsed by the Sanders campaign or by the Hudson County Democratic Organization. When you allow an asterisk to go on the ballot saying these may not be true endorsements, that actually very much undermines those associational interests, which the Supreme Court held in you are compelling state interests. Thank you. Let me just see. Dr. Roth, do you have any further questions of counsel? I have no further questions. Just one quick one. Is the relevant question in terms of qualifying for Anderson-Burdick whether a regulation is content-based or just whether it's politically neutral? And I'm thinking in particular of the Ninth Circuit's decision in Caruso, concluding that something that's content-based but politically neutral would still be subject to that test. Absolutely, Your Honor. I think it would be hard to apply Anderson-Burdick to only non-content-based distinctions because almost all of the cases, starting with Anderson and Burdick, have some kind of actual content-based association. So Burdick, for example, is certainly a content-based distinction. If you want to vote for somebody who has already been checked off on the ballot, you can check. You can vote for them. If you do not, then you want to write them in. You cannot do that. So that is certainly a classic example of content-based. What content of message are you trying to state with your vote? If it's X, you can do it. If it's Y, you can't do it. And so by its very definition, cases like Burdick and Anderson themselves embrace the idea that not all content-based restrictions are subject to strict scrutiny. Certainly there was this idea of content-based discrimination in the case law, and yet at that time, the court decided not to use that because it recognized that states have to regulate ballots in a way that they don't have to regulate other forms of speech. And so that is why a more flexible test is applied in these circumstances, and that's why Anderson-Burdick applies to these situations where the mechanism of the voting process is at issue. So long as politically neutral? I'm sorry, Your Honor? So long as politically neutral? So there is a good question as to whether or not Anderson-Burdick applies to a speech that is clearly viewpoint discrimination. I don't think that issue is teed up here. Appellants in their own complaint at paragraph 64 disavows that as viewpoint discrimination. They seem to be going back on that now, but the statute itself is viewpoint neutral. You can say whatever you like about any individual so long as you get consent. So that's not a viewpoint discriminatory rule. I do think there's an open question as to whether or not Anderson-Burdick sliding scale test applies to statutes that are viewpoint discriminatory. One can characterize Burdick as viewpoint discriminatory as well, right? Your viewpoint as to who you want to vote for determines whether or not you get to do it. Nonetheless, the court applied this flexible standard. I think then, you know, you would look to whether or not the effect of the viewpoint discrimination imposes a more severe burden on the candidate's ability to speak. Again, that issue is not squarely presented to this court because the statute issue is not viewpoint discriminatory. Thank you. Thank you very much. I have a lot to say in a short time to say it. Judge Schwartz, I will refer you to our principal brief, page 35 and 36, to answer your question about third parties. Since I can't say it better than what I did in the papers, I'll leave it to that if that's okay with you. Very good. As far as the city of Austin goes, the ballot slogan regulations are neither agnostic as to content nor an examination of speech in mere service of drawing neutral distinctions. Instead, New Jersey's ballot slogan laws single out any topic or subject matter concerning individuals or New Jersey corporations for differential treatment and can only stand if they survive strict scrutiny. Counsel talked a lot about truth on the ballot. The slogan statutes are not concerned about truth. Truth is not a slogan requirement. All they care about is the proper authorization. Is there a stated interest in making sure that the ballot doesn't confuse the voter and doesn't deceive the voter? There is, Your Honor, but it's not a compelling interest. It is important, and the Supreme Court's never recognized it as compelling, though. Burson recognized it was compelling. Voter confusion was recognized in Burson as compelling. And you recognized election integrity. Election integrity in respect to the mechanics of the voting process. Yes, Judge. But that does not have anything to do with candidate speech. A candidate could say, I will create or end this or that government policy on their ballot slogan, and it can be entirely false, but because it doesn't require authorization, it could go on the ballot. And with respect to Burdick itself, I think counsel kind of mischaracterizes it because the both majority and the dissent talk about, if you'll give me just a moment, that only the right to cast a vote was at issue in the case, not freedom of expression. And then you can look at the majority opinion, 438 to 39, and the dissent at 445 inexplicably. In which case was that? Because you said it so fast. This is Burdick itself. Our case is McIntyre. Mr. Mazo is Mrs. McIntyre. This is speech. This is not mechanics of voting. This is candidate speech on the ballot. New Jersey wasn't required to do this, but once they did, they ran for a penny and for a pound on the speech clause. And so they have to abide by the speech clause of the First Amendment. You know, there's a case called Norman in the Supreme Court, and I think there someone wanted to affiliate with, adopt the name of another party or somebody else who had the name of the party, something along those lines. And Norman says that it's a simple expedient to seek consent to foster an informed electorate. That's the court's language, not mine. Isn't all we have here is a simple expedient through the consent requirement, as Norman seemed to mention as an alternative to the circumstance they had present there? I don't think so, Judge. I mean, at first blush it could seem like that, but that is really a party affiliation issue. The type of tailoring may be appropriate when a person's freedom of association is at issue, but is inappropriate when the issue is free speech. Mentioning another person or corporation is not always an attempt to associate with them. But what if this, in Norman, somebody wanted to, like, have on their, by their name, a name of a particular political party, a newly established one, that name was the same as somebody else's. Sure. They said consent was there. So wouldn't the candidate view that as also an effort of speech? They may, but it's really a freedom of association with that political party. And it's just, and so that case is like Timmons, and it's like Washington State versus Grange. People, the law was there to make sure you did not, or even the district court's other opinion with Gargano. It was making sure how the candidate appears on the ballot, party ID. That's mechanics. We're talking about speech and the ballot slogans. Burdick, Timmons, and you talk about not just freedom of association, but also freedom of speech. Right? They do. Admission and passing, but ultimately they come down on freedom of association. They don't limit the application of the test to that situation. They do not, but they're also pre-reed. And reed says it doesn't matter what the purpose of the law is, if there are content regulations of speech, you go to strict scrutiny, and we believe the statutes fail. So does whether Anderson, Burdick, or the First Amendment test apply turn on whether we accept your characterization of this being content-based? Again, Your Honor, I don't think so. I don't think the cases necessarily have to be in conflict. We believe the better avenue of strict scrutiny is through reed. However, we also believe that the requirements on candidates to get authorization if they're going to criticize someone is extremely burdensome, and therefore viewpoint discriminatory if you want to have some kind of negative expression on the ballot of a person or corporation. And so you get to strict scrutiny that way as well under the Anderson-Burdick analysis. I take your point that there's not yet a true record developed, but where are there even allegations as to the severity of the burden? My clients weren't able to get authorization from the slogans that they wanted to do. We did not go further in depth than that in the complaint, Your Honor. You're correct about that, but they weren't able to get them. And we believe for a facial challenge, that's enough to pledge. Thank you very much. Thank you, Judge. We appreciate the briefing in this case and the argument. We're going to ask counsel to please confer and speak with the requirer about getting a transcript of today's argument. So after we leave the bench, you can chat with our requirer to arrange for that, to split the expense for that. We'd appreciate it. We'll take the matter under advisement.